```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Annette Squeglia

    v.                                                Civil No. 16-cv-238-JD
                                                          Opinion No. 2017 DNH 036
Nancy A. Berryhill, Acting
Commissioner of Social Security [1]


O R D E R

Annette Squeglia seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  Squeglia contends that the Administrative Law Judge ("ALJ") erred in concluding that she was not disabled prior to her last insured date.  Squeglia moves to reverse the decision.  The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin.  See Fed. R. Civ. P. 25(d).

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castillo Condo. Ass'n v. U.S. Dep't of Housing & Urban Dev., 821 F.3d 92, 97 (1st Cir. 2016) (internal quotation marks omitted). "[S]ubstantial evidence does not mean either uncontradicted evidence or overwhelming evidence" but instead can be satisfied "even if the record arguably could justify a different conclusion." Id. (internal quotation marks omitted).

## Background

Squeglia applied for social security disability insurance benefits in February of 2011, alleging a disability beginning on January 1, 1995, caused by cyclical vomiting syndrome or stomach migraine, panic attacks, anxiety, and nausea. Her last insured date was June 30, 1998. Squeglia was thirty-five years old when her insured period expired. She completed the twelfth grade and had worked as an electronics assembler and solderer and as a waitress.

Prior to her last insured date, Squeglia went to the emergency room in March of 1998 because of vomiting, abdominal pain, and diarrhea. Tests showed that her amylase level was elevated.[2] She improved while in the emergency room and reported that she was not in pain and felt fine. The abdominal x-ray done during that incident was normal.

In December of 1998, Squeglia went to the emergency room because of abdominal pain. Squeglia reported a history of abdominal pain, nausea, and vomiting. On examination, Dr. Martinelli found that Squeglia's heartrate and rhythm were normal and her abdomen was not tender when she was examined while distracted. When Squeglia focused on the examination, however, she indicated that her abdomen was tender. The abdominal CT scan suggested pancreatitis but was otherwise normal.

The next day Squeglia again went to the emergency room for abdominal pain. The examination, abdominal x-ray, and ultrasound were normal. Dr. Martinelli wrote that Squeglia appeared to have acute episodes of pancreatitis but that the presentation was atypical. A test done in January of 1999 to examine the bile ducts confirmed gastritis.

---

[2] Amylase is an enzyme involved in digestion.

Squeglia had another episode of pain, nausea, and vomiting in March of 2001. She was diagnosed with gastroenteritis. During an examination in April of 2002, Squeglia reported her prior abdominal pain and elevated amylase level, said she had had no continuing problem, and was taking medication for gastritis without symptoms. On examination, the provider found no acute distress and nothing out of the ordinary.

On November 16, 2010, Dr. Kuo provided his opinion that Squeglia's symptoms met the criteria for cyclical vomiting syndrome, that her symptoms had increased recently, and that if she took hydromorphone at the onset the symptoms would stop. On June 16, 2011, Dr. Kuo reported that he was treating Squeglia for cyclical vomiting syndrome. In May of 2012, Nurse Practitioner Christoper Shaw provided an opinion that Dr. Kuo signed in which Shaw stated that Squeglia had both chromic abdominal pain syndrome and cyclical vomiting syndrome. Shaw thought it was likely that the illness could have caused Squeglia to miss work in the past and that the illness would continue to interfere with her ability to work.

Squeglia's application for social security benefits was denied, and she requested a hearing before an administrative judge. The hearing was held on May 15, 2012. Squeglia appeared and testified at the hearing. Dr. Maimon, who is board certified in internal medicine with a subspecialty in

4

gastroenterology, appeared and testified as an independent medical expert.

Squeglia testified that she stopped working when she became ill with cyclical vomiting syndrome because she required so many bathroom breaks. She said that in 1995 she missed a few days of work each week because of the illness and that in 1998 she missed at least two days of work each month. She said that she was diagnosed with gastritis at Massachusetts General Hospital, where she had exploratory surgery that resulted in removal of her gallbladder and appendix.

Squeglia also testified that despite medication she was unable to leave her home although she had managed to stay out of the hospital. While she gave details about her current condition, she said she did not remember details about her condition between 1995 and 1998.

Dr. Maimon reviewed Squeglia's medical records and noted that there was little medical evidence between 1995 and Squeglia's date last insured in 1998. He discussed the medical records and noted that while pancreatitis is a medically determinable impairment, cyclical vomiting syndrome is not. Dr. Maimon said that Squeglia could have had cyclical vomiting syndrome before 1998 based on a 2015 doctor's report and that the medical records suggested a diagnosis of pancreatitis in 1998 and 1999 and irritable bowel syndrome in 2002. Dr. Maimon

5

testified that because the record lacks any elevated lipase levels, it did not support chronic pancreatitis.

Dr. Maimon found nothing in the record to substantiate Squeglia's claims of frequent illness during the relevant period and noted that it was unclear how often she was sick before 1998. Due to the lack of evidence, Dr. Maimon found it hard to assess Squeglia's residual functional capacity but thought she should not work near hazardous machinery and should be near a bathroom. Because of the lack of evidence prior to 1998, Dr. Maimon said he could only speculate about her residual functional capacity then. Currently, Dr. Maimon thought that Squeglia could work with some lifting, standing, and walking restrictions as long as she was near a bathroom.

The ALJ found that Squeglia had a severe impairment due to pancreatitis/cyclical vomiting syndrome, which did not meet or equal a listed impairment, including Listing 5.00. The ALJ found that through her last insured date Squeglia had the residual functional capacity to do a full range of work at all exertional levels, as long as she avoided unprotected heights and dangerous machinery and had close proximity to a restroom. Although Squeglia could not perform her past work, the ALJ found that there were other jobs she could do, such as merchandise marker, subassembler, and routing clerk.

Based on those findings, the ALJ concluded that Squeglia had not been disabled before her last insured date. Squeglia requested review of the ALJ's decision before the Appeals Council. On September 16, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the Acting Commissioner.

## Discussion

Squeglia moves to reverse the Acting Commissioner's decision, arguing that the ALJ erred in weighing the medical opinions, in the credibility assessment, in the Step Five finding, and by failing to consider Social Security Ruling 83-20. The Acting Commissioner moves to affirm, arguing that the ALJ properly determined that Squeglia was not disabled before her last insured date. Squeglia filed a response to the Acting Commissioner's motion.

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.[3] Freeman

---

[3] The first four steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and her ability to do past relevant work. 20 C.F.R. § 404.1520(a).

7

v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

A. Last Insured Date and Social Security Ruling 83-20

To be eligible for disability insurance benefits, the claimant must have been disabled while she had insured status under the social security program.  42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.101(a); Jack v. Comm'r, Social Security Admin., --- F. App'x ---, 2017 WL 104752, at *2 (11th Cir. Jan. 11, 2017). For that reason, a claimant must show that she was disabled, within the meaning of the Social Security Act, before her last insured date.  Fischer, 831 F.3d at 32-33; Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982).  "A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."  Titles II and XVI:  Onset of Disability, SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983).

When a claimant has been determined to be presently disabled, the issue remains to determine the date of the onset

of the disability.[4]  SSR 83-20, at *1.  In some cases, SSR 83-20 requires the ALJ to call a medical expert to assist in determining the onset date.  The First Circuit, however, has recently expressed doubt about the application of SSR 83-20. Fischer, 831 F.3d at 39.

In this case, the ALJ did have a medical expert who testified at the hearing.  The ALJ also considered the matters required in SSR 83-20 for determining an onset date.  See SSR 83-20, at *1.  Therefore, whether or not SSR 83-20 is binding in this circuit and whether it would apply in this case, Squeglia has not shown that the ALJ failed to comply with its requirements.

B. Medical Opinion Evidence

Squeglia argues that the ALJ erred in giving more weight to the opinions of the independent medical expert, Dr. Maimon, and less weight to the opinions of Nurse Practitioner Shaw and Dr. Kuo.  Specifically, she contends that the ALJ should have credited the opinions of Shaw and Dr. Kuo as to the severity of her symptoms and the likely effect on her ability to work.  The

---

[4] In this case, the ALJ did not decide whether Squeglia is presently disabled, and she does not argue that the ALJ should have made that finding.  While the First Circuit has found that the issue of present disability has been poorly explained by the Acting Commissioner, the court did not require ALJs to make a ruling on the onset date of disability after a date last insured.  Fischer, 831 F.3d at 37-38.

9

Acting Commissioner contends that the ALJ properly evaluated the medical evidence.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions from all sources are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention. § 404.1527(c). "[U]nder the treating source rule, controlling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Arrington v. Colvin, --- F. Supp. 3d ---, 2016 WL 6562550, at *16 (D. Mass. Nov. 3, 2016) (internal quotation marks omitted).

In addition, an ALJ may obtain information and opinions from an independent medical expert about the nature and severity of a claimant's impairments. 20 C.F.R. § 404.1527(e)(2)(iii). Those opinions are assessed under the same criteria used for other medical opinions. Id.

The ALJ credited Dr. Kuo's diagnosis of cyclical vomiting disorder in 2010. Based on that diagnosis and diagnoses of

10

pancreatitis, the ALJ found that Squeglia had those severe impairments before her date last insured. Therefore, Squeglia's arguments asserting Dr. Kuo's expertise in the area of cyclical vomiting disorder do not undermine the ALJ's finding.

The ALJ gave little weight to the opinion in May of 2012 of Nurse Practitioner Christopher Shaw, which was also signed by Dr. Kuo, that Squeglia's condition of chronic abdominal pain syndrome and cyclical vomiting "likely . . . has caused her to miss many days of work in the past and will continue to interfere with her ability to hold down regular work." The ALJ explained that Shaw and Kuo had not made a diagnosis of when the condition began and had only started treating Squeglia in 2010, long after the expiration of her insurance. For that reason, they lacked personal experience with her condition during the relevant time.

The ALJ also noted that contrary to the Shaw and Kuo opinion the medical records showed minimal evidence of disabling vomiting attacks or abdominal pain prior to the date last ensured and also during the period shortly after. Squeglia contends that the ALJ's assessment is wrong because she was treated for abdominal pain in 1984 and 1987 in addition to treatment in March of 1998. She also notes she was treated six months after her insured date and at that time complained of an eight-year history of abdominal pain and other symptoms.

11

The cited episodic events support the ALJ's finding.  In addition, treatment notes that merely repeat a claimant's subjective complaints are not medical opinions because the notes are not "'statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions.'"  Hesson v. Colvin, 2015 WL 7259747, at *4 (D. Me. Sept. 29, 2015) (quoting 20 C.F.R. § 416.927(a)(2)).  The episodes in March and December of 1998 were brief, and Squeglia told medical providers in 2001 that medication was controlling her symptoms.

 The ALJ did not "simply reject" the opinions of Dr. Kuo and Nurse Practitioner Shaw, as Squeglia asserts.  Instead, the ALJ explained the weight given to those opinions.  Squeglia has not shown that the ALJ improperly weighed the opinions provided by Dr. Kuo and Nurse Practitioner Shaw.

 Squeglia also faults the ALJ for relying on the opinion of Dr. Maimon, the independent medical expert who testified at the hearing.  Squeglia misunderstands Dr. Maimon's opinion and the limitations he expressed about forming an opinion of her functional capacity before June of 1998.

 Dr. Maimon correctly noted that there was little medical evidence from the relevant time period.  He testified that

12

Squeglia's medical records showed no office visits or discussions of employment and showed that she had infrequent symptoms. Dr. Maimon stated that there was nothing in her records to show that she was sick every day, as Squeglia testified at the hearing. The medical evidence supports Dr. Maimon's testimony.

Because of the lack of medical evidence, Dr. Maimon said that he could not give a residual functional capacity for the period between 1995 and 1998, except that Squeglia would have to avoid hazardous machinery and would need to be near a bathroom. Dr. Maimon concluded that if Squeglia were to work in her present condition, she could lift ten to twenty pounds and sit for six hours in an eight-hour day as long as she was near a bathroom. Squeglia has not shown that the ALJ erred in his analysis of Dr. Maimon's opinions.

C. Credibility

In determining the credibility of the claimant's subjective statements about her functional limitations, the ALJ considers the other evidence related to the claimant's pain, symptoms, and ability to function. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); see also Titles II and XVI: Evaluation of Symptoms in Disability Claims,

SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  The factors the ALJ reviews are the claimant's daily activities, the frequency and intensity of pain and symptoms, precipitating and aggravating factors, medication taken to address pain and symptoms, other treatment for pain and symptoms, other measures taken to relieve pain or symptoms, and other factions related to functional limitations and restrictions.  20 C.F.R. § 404.1529(c)(3).  An ALJ's credibility determination will be affirmed if it is supported by substantial evidence.

In this case, the ALJ found at Step Two that Squeglia had a medically determinable impairment due to "pancreatitis/cyclical vomiting syndrome" during the relevant period.  The ALJ further found that although the impairment could be expected to cause the symptoms Squeglia alleged, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Squeglia contends that the ALJ erred by ignoring her former husband's testimony and erred because her statements about the severity of her symptoms are supported by Dr. Kuo's opinion.

The ALJ did consider both Squeglia's testimony about the severity of her symptoms and her former husband's testimony that Squeglia lost her last job because she was so often sick.  The ALJ reviewed the meager medical records of Squeglia's treatment before June 30, 1998, explained that the little treatment

Squeglia received and the objective medical findings between January 1, 1995, and June 30, 1998, did not support the severity of symptoms that she claimed.[5]  As explained above, the ALJ gave little weight to the opinion provided by Nurse Practitioner Shaw, and signed by Dr. Kuo, that Squeglia likely missed many days of work because of her illness and provided appropriate reasons for doing so.[6]  Therefore, substantial evidence supports the ALJ's credibility determination.

---

[5] Squeglia argues that the ALJ erred in citing a lack of evidence to support her claims as a basis for the credibility finding, but she cites no authority in support of her theory. To the contrary, the ALJ is required to consider the medications, treatment, and other measures the claimant used to address the impairment in determining credibility. § 404.1529(c)(3).  Further, a lack of sustained treatment for a claimed impairment may be evidence that the claimant is not disabled.  See, e.g., Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); Smolinsky v. Comm'r, Social Security Admin., 2009 WL 1321907, at *10 (D.N.H. May 12, 2009) (citing cases).
   Squeglia also argues that the ALJ erred in failing to assess separately the credibility of the testimony of her former husband.  She cites no authority that a credibility assessment must be done as to the testimony of a witness other than the claimant or must be considered separately when the same reasons applied to the claimant's credibility.

[6] Importantly, Squeglia bears the burden of proving that she had a disabling impairment through Step Four of the sequential analysis.  Freeman, 274 F.3d at 608.  If Squeglia lost her job in 1995 because of absences due to cyclical vomiting illness, presumably she could have submitted employment records or other evidence to show that to be the case.

15

D. Step Five

Squeglia asserts that the "ALJ's RFC-related errors . . . irreparably tainted the ALJ's Step 5 finding."  In support, Squeglia argues that because the vocational expert's testimony was based on an inaccurate residual functional capacity assessment, that testimony does not provide substantial evidence to support the ALJ's finding that jobs existed that Squeglia could do.  Squeglia, however, does not explain in her motion what was wrong with the ALJ's residual functional capacity assessment, which was made at Step Four.  In her reply, Squeglia states that the ALJ's residual functional capacity assessment "is flawed because the ALJ incorrectly granted significant weight to the medical expert who testified at the hearing, Dr. Maimon, and only limited weight to treating specialist, Dr. Kuo."

In assessing a claimant's residual functional capacity, the ALJ determines "the most [the claimant] can do despite [her] limitations . . . based on all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1).  As is explained above, the ALJ properly weighed the medical opinions in the record and decided to give greater weight to Dr. Maimon's opinion.  The ALJ found, based on the record evidence, that during the relevant period Squeglia had a residual functional capacity to do a full range of work at all exertional levels as

16

long as she avoided unprotected heights and dangerous moving machinery and was close to a restroom. The ALJ also found that Squeglia was limited to uncomplicated tasks.

Because Squeglia has not shown that the ALJ's residual functional capacity assessment was erroneous, her argument that the ALJ's Step Five finding is flawed cannot succeed. Substantial evidence based on the vocational expert's testimony supports the ALJ's finding at Step Five.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 8) is denied.

The Acting Commissioner's motion to affirm (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

February 28, 2017

cc:  Penelope E. Gronbeck, Esq.
     T. David Plourde, Esq.